UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CA, INC., D/B/A CA TECHNOLOGIES,<br><br>                  Plaintiff,<br><br>v.<br><br>NEW RELIC, INC.,<br><br>                  Defendant. | Case No. 2:12-cv-05468-WDW |

**DEFENDANT NEW RELIC'S SUPPLEMENTAL BRIEF ON CLAIM CONSTRUCTION**

788688.02

## **TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | THE '580 PATENT | | 2 |
| | A. | Reporting | 2 |
| | | 1. The patent specification repeatedly describes "reporting" as communicating to a user that a routine has stalled. | 3 |
| | | 2. Disclosures of the '935 patent, incorporated into the specification, also describe reporting as communicating to a user. | 5 |
| | | 3. CA cannot avoid construction of "reporting" by claiming it has some settled yet undefined "plain and ordinary" meaning. | 6 |
| III. | CONCLUSION | | 7 |

I.      **INTRODUCTION**

The '580 patent discloses numerous ways of reporting that a particular routine has stalled. The common denominator for all of these methods is that they are directed to "suitable means for communicating the information to a user in a meaningful manner." '580 patent 10:54-56. Accordingly "reporting" in the patent claims should be construed to mean communicating the information to a user. This interpretation aligns with the way in which a person of ordinary skill would understand the patent based on the plain language of the claims, the disclosures of the specification, and the other relevant evidence.

Furthermore, construing the term "reporting" is necessary to resolve differing interpretations between New Relic and CA. In the course of discovery, New Relic informed CA that New Relic's Java software agent no longer has a feature that detects and reports stalls, and that New Relic's other software agents never did. CA responded by adding a new infringement theory to its amended infringement contentions—one accusing an "Apdex" metric that is used in New Relic's Java and .NET agents. But the Apdex metric assigns a score to a method or routine based on normalized average response times, Apdex does not report to a user that a particular routine has stalled. *See, e.g.*, Supp. Johanningmeier Decl. Ex. N (Gochee Tr.) at 96:10-97:22. CA must therefore intend to argue, despite the clear teachings of the patents, that the "reporting" limitation does not require communicating the stalled status of a particular routine to a user.

As with other terms, CA attempts to avoid a definitive claim construction by simply positing that "ordinary meaning" should apply. But the Federal Circuit has established that the district court must resolve claim construction disputes among parties. With that in mind, only New Relic's proposed construction informs the meaning of the patent claims as one of ordinary skill in the art would have understood at the time of the filing of the patent applications. New Relic therefore requests that the Court construe "reporting" to mean "communicating to a user."

1

788688.02

## II. THE '580 PATENT

### A. Reporting

| Disputed Claim Term | CA's Proposal | New Relic's Proposal |
|---|---|---|
| reporting | Plain and ordinary meaning as understood by one of ordinary skill in the art | communicating to a user |

The alleged invention of U.S. Patent No. 7,797,580 (the '580 patent) concerns a particular method of detecting whether a software method or routine has stalled while executing, and then reporting that fact. Asserted independent claims 1, 7, 11, 15, and 20 of the '580 patent each include the limitation of reporting said particular routine as stalled.[1] Claim 1 is illustrative:

> 1. A method for detecting whether a routine has stalled, comprising:
> receiving a call from within a particular routine indicating that said particular routine has started, said particular routine is one of a plurality of routines that comprise a process;
> receiving a call from within said particular routine indicating that said particular routine has completed, if said particular routine has completed;
> automatically determining that said particular routine has stalled if said call indicating that said particular routine has completed is not provided prior to being overdue, such that being overdue is based on said call indicating that a particular routine has started; and
> ***reporting* that said particular routine has stalled, if said particular routine has stalled**.

'580 patent Claim 1 (emphasis added).

The claim language clearly indicates that, after the software performing the method internally determines "that said particular routine has stalled," the next step is to report that determination to someone. A person of ordinary skill would look to the specification of the

---

[1] Claims 7 and 8 of U.S. Patent 7,225,361 (the '361 patent) also contain a reporting limitation. Those claims were asserted but not charted in CA's preliminary infringement contentions, and then were left out of CA's amended infringement contentions on September 12, 2013. New Relic understands claims 7 and 8 of the '361 patent to no longer be asserted.

2

788688.02

patent to learn who receives that report. They would see that in every disclosure and every embodiment of the invention, the invention reports to an end-user of the software.

### 1. The patent specification repeatedly describes "reporting" as communicating to a user that a routine has stalled.

The '580 patent discloses many ways to communicate the fact that a routine has stalled, including emails, printed reports, logs, graphical displays, and other methods. '580 patent 9:58-10:1; 10:51-56. In every disclosed embodiment, however, the reporting mechanism is suitable for reporting to an end-user. For example, in one embodiment: "If the counter reaches that threshold, the counter **reports to a user, client, etc.**" '580 patent 10:31-32 (emphasis added). And in reference to other embodiments:

> If so, the data associated with the metric that met its threshold is reported, or all data (or another subset of the data) is reported in step 410. Step 410 can include sending an email, sending a page, displaying a dialog box, playing a sound, printing a document, writing to a file, writing to report/log, reporting to a routine, displaying the data graphically **or any other suitable means for communicating the information to a user** in a meaningful manner.

'580 patent 10:48-56 (emphasis added). Thus, in each provided example, and even when the reporting mechanism is described as "reporting to a routine," the specification is clear that the routine must be one that constitutes "suitable means for communicating . . . to a user." *Id.* Other, non-disclosed reporting mechanisms are contemplated, but they too must be "suitable means for communicating . . . to a user." *Id.*

Multiple disclosures of the patent support this interpretation. For example, when discussing the "current invention" generally, the patent instructs that the selection of a particular method is "dictated by the needs of the user":

> Many different types of reporting mechanisms can be used with the current invention. No one reporting mechanism is more suited for the current invention because the reporting mechanism used is likely **dictated by the needs of the user**.

3

788688.02

'580 patent 10:1-5 (emphasis added). Thus, it is clear that the user is the target of whichever reporting mechanism is selected.

As the claim language and each disclosed embodiment makes clear, the reporting step is separate from and occurs after the determination that the routine has stalled—and after the setting of a "STALLED Flag" or counter adjustment. *See, e.g.*, '580 patent 12:11-17 (claim 1); Fig. 5 ("update reporting"); Fig. 7 (same); Fig. 8 ("report data"). The patent discloses that one embodiment of a reporting mechanism is a counter, but also discloses that the counter mechanism must "include a log" that allows the system to report on many "useful data values." '580 patent 10:6-18. Reporting based on this log allows the user to monitor software metrics such as "the identity of all instances that stalled." *Id.* at 10:17-18; *see also* 10:39-41 ("In step 404, the counter logs the change by noting the time and the identification of the instance of the method."). Neither the context of the claim language nor these disclosures in the written description would make sense to one of ordinary skill if the report (of the "reporting" step) is not a communication to a user of the disclosed monitoring and profiling software. In other words, a determination internal to the software cannot qualify as "reporting," which is a distinct step requiring an outward-facing communication to a user.

As indicated above, the "current invention" of the '580 patent includes many reporting mechanisms, chosen as "dictated by the needs of the user." '580 patent 10:1-5. No other recipient of the report—besides a user / client of the software—is disclosed in, or enabled by, the specification. *See Retractable Tech., Inc. v. Becton, Dickenson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) (cautioning against allowing the "claim language to become divorced from what the specification conveys is the invention"). Where the specification "repeatedly and uniformly" uses a claim term in a particular way, as here, there will be no support in the intrinsic evidence for a conclusion that a person of ordinary skill would understand the term to be broader. *See,*

4

*e.g.*, *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1374-75 (Fed. Cir. 2009) (upholding a construction according to the repeated description of an element as pointed, where the descriptions never suggested that the element could be anything other than pointed); *Nystrom v. TREX Co.*, 424 F.3d 1136, 1145 (Fed. Cir. 2005) (affirming construction according to how the written description "consistently use[d] the term," where "there was nothing in the intrinsic record to support the conclusion that a skilled artisan would have construed the term" to be broader).

The meaning of a claim term is to be determined with reference to how one of ordinary skill would understand the specification, which is the "single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005).[2] New Relic's proposed construction describes who is reported to, and defines the scope of "reporting" as a person of ordinary skill in the art would understand in light of the patent specification. A person of ordinary skill would understand that the claimed reporting mechanism includes "suitable means for communicating . . . to a user." *See, e.g.*, '580 patent 10:48-56.

### 2. Disclosures of the '935 patent, incorporated into the specification, also describe reporting as communicating to a user.

The '580 patent incorporates by reference the entirety of the disclosures of U.S. Patent No. 7,512,935 (the '935 patent). *See* '580 patent 7:20-23. Those disclosures further support interpreting "reporting" to require communication to a user. For example, the incorporated disclosures state that: "A lost method will be reported to the user." '935 patent 6:14-16; *see also* 4:1-2 ("After the timer is stopped, the amount of time measured will be reported to the user."). And of course this interpretation comports with the stated purpose of all of the patents in suit,

---

[2] *See also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather we must look at the ordinary meaning in the context of the written description and the prosecution history." (internal quotation marks omitted)).

5

which disclose alleged inventions for *user* monitoring and profiling of software. *See, e.g.*, '935 patent 1:17-19 ("Some of the tools provide their results in text files or on a monitor. Other tools graphically display their results.") As discussed above, the patents disclose multiple ways to report, but all are directed to the user of the reporting software.

### 3. CA cannot avoid construction of "reporting" by claiming it has some settled yet undefined "plain and ordinary" meaning.

As with other terms discussed in prior briefs, CA tries to avoid construction by the Court, arguing that "reporting" has a plain and ordinary meaning while declining to suggest what exactly that might be. As discussed in New Relic's opening and response briefs, CA cannot avoid construction in this fashion. *See* Opening Br. (Dkt. 39) at 13; Response Br. (Dkt. 49) at 7-9. When the interpretation and proper scope of a claim term is disputed such that "reliance on a term's 'ordinary' meaning does not resolve the parties' dispute," then the court must construe the disputed term to determine the proper claim scope. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). This is because "the court, and not the jury, should resolve claim construction disputes." *Id.* at 1362 n.3.

Here, CA has not provided any suggestion of what it believes a person of ordinary skill would understand the disputed term to mean. Courts have disapproved of this approach, which risks postponing resolution of disputes that should be dealt with prior to trial. *See* Response Br. (Dkt. 49) at 8. Tellingly, CA does not agree to adopt New Relic's straightforward and well-supported construction of the "reporting" term, demonstrating that there is a real dispute between the parties about the scope of the corresponding claim elements.

The Federal Circuit has made clear that district courts should not allow patentees to hold off legitimate claim construction disputes for a later day by arguing that construction is not required because some undefined "ordinary meaning" applies. New Relic therefore respectfully

6

788688.02

submits that "reporting" must be construed, and should be construed consistent with the claim language and other intrinsic evidence to mean "communicating to a user."

### III.     CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court adopt New Relic's proposed construction and reject CA's proposal.

Dated:  October 30, 2013              Respectfully submitted,

                                                           Keker & Van Nest LLP

                                                           /s/ *Corey Johanningmeier*
                                                           ROBERT A. VAN NEST
                                                           CHRISTA M. ANDERSON
                                                           COREY A. JOHANNINGMEIER
                                                           ELIZABETH K. MCCLOSKEY
                                                           633 Battery Street
                                                           San Francisco, CA 94111
                                                           Telephone:    415.391.5400
                                                           Facsimile:     415.397.7188

                                                                         and

                                             CULLEN AND DYKMAN LLP
                                             C. Nathan Dee, Esq. (CD 9703)
                                             Elizabeth M. Aboulafia, Esq. (EC 2090)
                                             100 Quentin Roosevelt Blvd.
                                             Garden City, New York 11530
                                             Telephone:    516.357.3700
                                             Facsimile:     516.357.3792

                                           *Attorneys for Defendant NEW RELIC, INC.*

788688.02

## CERTIFICATE OF SERVICE

  I hereby certify that on October 30, 2013, the foregoing document was served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

| | |
|---|---|
| David J. Ball<br>Bracewell & Giuliani LLP<br>1251 Avenue of the Americas<br>New York, NY  10020<br>Email: david.ball@bgllp.com | Attorneys for Plaintiff<br>CA, INC., D/B/A CA TECHNOLOGIES |
| Alan D. Albright<br>Barry K. Shelton<br>Matt Gates<br>Cody Gartman<br>Bracewell & Giuliani LLP<br>111 Congress Avenue, Suite 2300<br>Austin, TX  78701<br>Email: alan.albright@bgllp.com<br>   barry.shelton@bgllp.com<br>   matt.gates@bgllp.com<br>   cody.gartman@bgllp.com | Attorneys for Plaintiff<br>CA, INC., D/B/A CA TECHNOLOGIES |
| C. Nathan Dee<br>Elizabeth M. Aboulafia<br>Cullen and Dykman LLP<br>100 Quentin Roosevelt Boulevard<br>Garden City, NY  11530<br>Email: ndee@cullenanddykman.com<br>Email: eaboulafia@cullenanddykman.com | Attorneys for Defendant<br>NEW RELIC, INC. |

              /s/ *Corey Johanningmeier*

788688.02